# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**DEVON PORTER,**

    Petitioner,

v.                                                Case No. 8:14-cv-2458-T-35AAS

**SECRETARY, DEPARTMENT
OF CORRECTIONS,** *et al.*,

    Respondent.
_____/

## O R D E R

This cause comes before the Court on Petitioner Porter's petition for the writ of habeas corpus under 28 U.S.C. § 2254. Upon consideration of the petition, the response and the reply (Docs. 1, 8, and 10), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, it is **ORDERED** that the petition is **DENIED**.

Porter challenges his conviction for trafficking in methamphetamine, for which conviction he serves a seven year sentence. Numerous exhibits ("Respondent's Exhibit __") support the response. The Respondent admits that Porter fully exhausted the grounds asserted in the petition and affirmatively "does not contest the timeliness of the petition . . . ." (Doc. 8 at 4)

## I. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998),

*cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable[,] an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786–87 (2011). *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 693. Federal courts must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted). As recognized in *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), an applicant's burden under Section 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal

habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103], (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.,* at [102]. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.,* at [103] (internal quotation marks omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed Porter's conviction and sentence on direct appeal. (Respondent's Exhibit 8) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Porter's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 6) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Harrington v. Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that

"resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Porter bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## II. DIRECT APPEAL

Porter raised two claims on direct appeal, specifically, whether the trial court erred by both denying a pre-trial motion to suppress evidence discovered during the post-arrest search of his car and excluding Porter's self-serving hearsay response to a question posed by one of the police officers. (Respondent's Exhibit 3) Porter's federal petition presents a claim regarding the motion to suppress but does not raise a claim with respect to the exclusion of his out of court statement as inadmissible hearsay.

Ground One:

Porter asserts that, "prior to the start of trial, trial counsel filed a motion to suppress the statements, sensory impressions and the contraband found as a result of an illegal search." (Doc. 1 at 6) Porter contends that the "trial court erred in denying Petitioner's motion to suppress." (Doc. 1 at 5) After two pre-trial hearings in which two security officers and the arresting police officer testified, the trial court denied a motion to suppress

the drugs that were discovered inside Porter's vehicle and issued the following findings of fact (Respondent's Exhibit 12, vol. I at 191–92):

> During the early morning hours of March 13, 2008, Anthony and Rafael Gonzalez were on duty as Security Guards at the Heart of Florida Hospital. They described their duties as being on foot patrol and occasionally using golf carts to generally police the hospital grounds.
>
> Some time after 4:00 a.m., they received a call indicating that there was a car parked in the no parking area next to the emergency entrance at the hospital. Together, they went to investigate. Upon their arrival at the emergency entrance of the hospital, they observed a car parked in front of the door in a no parking area. The security guards described the no parking area as a lined area in front of the emergency entrance with signs posted stating "'No Parking" and a painted "'No Parking" on the ground.
>
> Upon further inspection of the car, they observed someone sitting behind the steering wheel, apparently either unconscious or asleep. Anthony Gonzalez knocked on the car window and the occupant (the Defendant, Devon Porter) appeared to wake up, look at him, and then go back to sleep.
>
> In light of the car being parked in a no parking zone and the occupant of the vehicle not being responsive other than to open his eyes, look at the security guards, and then go back to sleep, they decided to call the Haines City Police Department. The two security guards stepped back from the vehicle and waited for the police to arrive, which took approximately ten to fifteen minutes.
>
> Officer Nicole Gusaeff received a dispatch at 4:39 a.m. indicating that there was a car parked in the emergency lane at the Heart of Florida Hospital. It took her apparently seven minutes to arrive, and she parked her car and made contact with the two security guards, Anthony Gonzalez and Rafael Gonzalez. She also observed the Chevy automobile parked, with its engine running, in front of the emergency entrance to the hospital. The car's right passenger side tires were sitting on the white striped area containing the words, "No Parking." She then approached the vehicle. Officer Gusaeff testified that she had no idea as to what the condition of the occupant might be. She was concerned that the occupant might be suffering from some type of medical emergency and, having arrived at the hospital, not being able to get out of the vehicle or go in.
>
> In any event, Officer Gusaeff knocked on the car window and did not get an immediate response. She knocked a second time without any results and then knocked a third time at which point the occupant (the Defendant, Devon Porter) responded and opened the car door. She asked the Defendant if he was alright and he said that he was there waiting for his girlfriend.
>
> Officer Gusaeff states that as soon as the Defendant opened his door, she immediately smelled the aroma of alcohol and noticed that the Defendant's eyes were bloodshot and watery. When the Defendant got out of his car, she also

noticed that his eyes were dilated. She asked the Defendant if he had had anything to drink, and he stated that he had a drink about fifty minutes before arriving.

The Defendant appeared to be "somewhat out of it" to Officer Gusaeff and initially somewhat unsteady upon getting out of the car.

Officer Gusaeff suspected that the Defendant was under the influence of alcohol and proceeded to perform some sobriety tests.

The Defendant was not able to follow the Officer's instructions concerning the Horizontal Gaze Nystagmus. During the one leg stand test, the Defendant stopped after counting to six, and the Officer gave him a second opportunity to stand on one leg, which he was able to do but counted very quickly. The Defendant was also unable to properly do the heel to toe walk.

Based on her observations of the Defendant in the vehicle, the smell of alcohol about his person, the condition of his eyes and his inability to properly perform all of the field sobriety tests, Officer Gusaeff concluded that she had probable cause to arrest the Defendant for a DUI.[1]

After handcuffing the Defendant, the Officer searched the vehicle and found drugs and drug paraphernalia, which have led to the charges in this case.

As discussed above under the standard of review, absent clear and convincing evidence to prove otherwise, the above facts are presumed to be correct. 28 U.S.C. § 2254(e)(1)

Porter argues that "[t]here was no basis for the arrest of petitioner on DUI charges" and "[t]herefore the trial court erred in denying [his] motion to suppress evidence collected from [his] vehicle." (Doc. 1 at 8) Based on the above findings of fact, the trial court denied the motion to suppress with the following analysis (Respondent's Exhibit 12 vol. I at 193):

> Officer Gusaeff arrived on the scene and observed a motor vehicle parked in a no parking area with the engine running and the occupant either unconscious or asleep. It look her several attempts to get the attention of the occupant (the Defendant, Devon Porter). As soon as the Defendant opened the door to the car, Officer Gusaeff immediately recognized the aroma of alcohol and noted that the Defendant's eyes were bloodshot and watery.

---

[1] The online docket for the Circuit Court for Polk County, available by searching under Porter's name at https://pro.polkcountyclerk.net/PRO/PublicSearch/PublicSearch, discloses that the State filed a *nolle prosequi* for the DUI charge two days after Porter's sentencing on the underlying trafficking conviction.

At that point, based on the totality of the circumstances, Officer Gusaeff formed a reasonable suspicion of criminal activity in that the Defendant was in control of a motor vehicle and his faculties could reasonably be interpreted to be impaired.

Officer Gusaeff proceeded with a series of field sobriety tests, which led her to the conclusion, based on her training and experience, and the totality of the circumstances that the Defendant's faculties were indeed impaired and he was in control of a motor vehicle. She, therefore, had probable cause to arrest the Defendant. Once the arrest was effectuated, she performed a search (incident to the arrest) of the vehicle in which the Defendant had been sitting. She found the drugs and paraphernalia that led to those charges being filed against the Defendant.

The Respondent argues that *Stone v. Powell*, 428 U.S. 465 (1976), precludes federal review of this Fourth Amendment claim because Porter had an opportunity for a full and fair review in the state court. *Stone*, 428 U.S. at 494, holds "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." For the preclusion under *Stone* to apply, the state court must issue findings of fact, as *Hern v. Florida*, 326 Fed. App'x 519, 522 (11th Cir. 2009),[2] explains:

> A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact. In *Tukes v. Dugger*, we addressed whether *Stone* foreclosed review of the validity of a search when the defendant presented his argument but the state courts failed to make findings of fact to resolve that argument. 911 F.2d 508, 513–14 (11th Cir. 1990). We concluded that the state courts had failed to afford the defendant a full and fair opportunity to litigate the validity of the search when they did not make findings of fact about whether the defendant had invoked his right to counsel or was in custody when he consented to the search of his home. We stated, "The trial court's failure to make explicit findings on matters essential to the fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a *Stone v. Powell* bar to our review of the claim." *Id.* at 514.

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

The Respondent provided both a transcript of the evidentiary hearing on the pre-trial motion to suppress and the state trial court's order, which denies the motion to suppress and contains clear findings of fact as recited above. (Respondent's Exhibit 12, vols. I and II at 56–80 and 90–193) The state trial court's ruling was affirmed on appeal in a *per curiam* decision without a written opinion. (Respondent's Exhibit 8) Porter fails to show denial of his opportunity for a full and fair review of this claim during the state trial and subsequent appellate proceedings. Consequently, *Stone* bars the Fourth Amendment claim from federal review.

Moreover, the state court correctly determined that the evidence discovered inside Porter's car was admissible. *See e.g., Carroll v. United States*, 267 U.S. 132 (1925) (finding an automobile exception to search warrant requirement), *Texas v. White*, 423 U.S. 67 (1975) (holding that a warrantless search of automobile is not unconstitutional, even if conducted at a later time and a different place from the arrest, if probable cause and exigent circumstances exist), *South Dakota v. Opperman*, 428 U.S. 364 (1976) (holding that an inventory search of automobile does not violate the constitution), and *United States v. Ross*, 456 U.S. 798 (1982) (holding that a warrantless search of automobile is not unconstitutional if police have probable cause to believe the vehicle contains evidence of a crime).

### III. POST-CONVICTION

As discussed earlier regarding the standard of review, under *Wright v. Moore*, 278 F.3d at 1254, the state court's rejection of Porter's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 9) In his federal petition, Porter alleges three claims of ineffective assistance of

counsel within his Ground Two. As determined below, Porter cannot meet his burden of proving that he was denied the effective assistance of counsel.

## A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Porter claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness

of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Porter must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Porter must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Porter cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are

- 11 -

inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). See also *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Porter must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In determining "reasonableness," a federal petition for the writ of habeas corpus permits an independent assessment of "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" but not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. See also *Pinholster*, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

The state court conducted an evidentiary hearing and denied the claims of ineffective assistance of counsel. Although the state court's order omits citing *Strickland*

as the standard for an ineffective assistance of counsel claim, no explicit citation is required. A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775–86 (11th Cir. 2003). In Florida, *Strickland* governs a claim of ineffective assistance of counsel. *Walls v. State*, 926 So. 2d 1156 (Fla. 2006). The state post-conviction court analyzed Porter's ineffective assistance of counsel claims consistent with *Strickland* — not contrary to *Strickland* — by phrasing the issue as "whether [trial counsel] was remiss" in performing certain functions that Porter alleges counsel should have performed, in other words, whether counsel's performance was deficient under *Strickland*. (Respondent's Exhibit 9 at 2) Consequently, Porter must show that the state court's ruling was either an unreasonable application of *Strickland* or an unreasonable determination of the facts. The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

Ground Two:

Porter alleges three claims of ineffective assistance of counsel within Ground Two, specifically, that counsel was ineffective for failing (1) to question the laboratory analyst regarding the analysis of the drugs, (2) to retain an independent expert to test the drugs, and (3) to adequately move for a judgment of acquittal and a new trial. The post-conviction court denied the claims with the following analysis (Respondent's Exhibit 9 at 1–6) (footnotes omitted) (italics original):

> 1. [The] Defendant was originally charged with trafficking in 200 grams or more of methamphetamine but, during trial, the State amended the information to reduce the trafficking amount to 28 grams or more but less than 200 grams. This had the effect of exposing Defendant, who was convicted by a jury, to a shorter minimum mandatory sentence than he might otherwise have faced. The amended motion

asserts that Defendant received ineffective assistance from his trial attorney Kayo Morgan. [T]his order will address the question whether Mr. Morgan was remiss in not questioning the State's lab analyst, not hiring an independent expert to test the drugs, and/or not making a more specific motion for judgment of acquittal.

2. The theory behind the present claim is that the drugs seized from Defendant's car, which were in the form of pills in two colors, actually contained only a small amount of methamphetamine; it is only additives that caused the combined weight to exceed the trafficking threshold. Thus, in Defendant's view, adequate counsel would have exploited this fact and established that Defendant could be convicted only of simple possession (if that). In support of this contention Defendant called an expert witness at [the] hearing, Dr. Terry Hall, a forensic chemist and onetime FDLE drug analyst. [T]he Court finds no basis to question the competency of this witness or his findings. Dr. Hall did not dispute the report of the FDLE witness who testified at Defendant's trial. However, the State chemist appears to have tested sample pills to determine the *presence* of methamphetamine, without quantifying the exact amount or percentage. Dr. Hall's testing found those amounts and percentages to be quite low, as his testimony will reflect.

3. Defendant's second witness was Attorney Morgan. The Court found this witness to be a zealous advocate who holds a sincere belief that he failed this client. While that question is ultimately for the Court to decide, the Court's appreciation for the candor of this witness should not go unremarked. Mr. Morgan testified that he approached this as a constructive possession case and argued that the State had not proven Defendant knew of the presence of the pills. (In fact he retains that belief to the present day.) This was so because all the pills were found inside a bag, which in turn was covered by a towel. Mr. Morgan made no effort to retain his own drug expert because he understood that the trafficking statute does not require that the illegal substance be segregated out from buffers, fillers, or other substances one might find in conjunction with illegal drugs. The information filed in this case tracks the statute, in that it alleges Defendant trafficked in "amphetamine or methamphetamine [or] *any mixture containing amphetamine or methamphetamine" (emphasis added).* In other words, Mr. Morgan's interpretation of the law is consistent with the statutory language.

. . . .

5. As noted above the relevant statute permits prosecution for trafficking in methamphetamine or any mixture containing it so long as the total weight exceeds certain minimum thresholds. In *State v. Yu,* 400 So. 2d 762 (Fla. 1981), the Supreme Court long ago held that the legislature's decision to include the "mixture" language when criminalizing drug trafficking was neither irrational nor unreasonable because dilution of a pure controlled substance could make that substance available to a greater number of persons. Defendant has attempted to distinguish *Yu,* first by citing *Ross v. State,* 528 So. 2d 1237 (Fla. 3d DCA), *rev. denied*, 537 So. 2d 569 (Fla. 1988). For the reasons that follow the Court holds that reliance on *Ross* is misplaced even though the Second District Court of Appeal (unlike others) has elected to follow it. *See, e.g., Safford v. State,* 708 So. 2d 676 (Fla. 2d DCA 1998). This is so because *Ross* is clearly distinguishable from the case at bar.

6. Ross was arrested based on his possession of 92 separate packets of white powder. Only two of the packets were lab-tested, the result proving positive for cocaine. The two packets alone would not have satisfied the 28-gram trafficking threshold, but the trial court permitted the State to extrapolate trafficking weight from the fact there were ninety more packets which, presumably, contained cocaine (or a mixture of same) as well. The decision to reverse seems to have turned solely on the rather ambiguous notion of "white powder," which could be any number of innocuous things including sugar. *See Bond v. State,* 538 So. 2d 499 (Fla. 3d DCA 1989). As noted in *Bond, Ross* distinguished white powders from items which can be at least tentatively identified as unlawful without chemical analysis, such as marijuana or pills. *See also Asmer v. State,* 416 So. 2d 485 (Fla. 4 DCA 1982). Because the present case, with hundreds of identical pills, does not involve powders, it is governed by *Asmer* rather than *Ross* or *Safford* (another "packet commingling" case).

7. Defendant has also placed great reliance on a federal decision, *United States v. Jackson,* 115 F.3d 843 (11th Cir. 1997). As a prefatory matter, the decisions of lower federal courts are not binding on state courts, though they may be considered for their persuasive value. *State v. Dwyer,* 332 So. 2d 333 (Fla. 1976). This is so even when such courts attempt to interpret a state statute. *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1 (1987). *Jackson* did not construe Florida's trafficking statute, but rather the federal sentencing guidelines.

In rejecting the three claims of ineffective assistance of counsel, the post-conviction court determined that counsel had not performed deficiently because the pills indisputably were a "mixture containing amphetamine or methamphetamine," which is all that is required under Florida's trafficking statute. When searching the car the arresting officer found a bag of pills, which she gave to the subsequent investigating office who determined that the bag contained 502 "blue-greenish" pills and 500 tan pills. (Respondent's Exhibit 12, vol. IV at 351 and 358). The state's chemist testified at trial (1) that the pills presented to him for testing consisted of "blue-greenish" pills and tan pills, (2) that each type of pill tested positive for methamphetamine and MDMA (also called "ecstasy"), and (3) that the total weight of each of the two types of pills exceeded one hundred grams (Respondent's Exhibit 12, vol. V at 417–22), which supports the

conviction for trafficking in excess of 28 grams of methamphetamine. In fact, as noted, the state reduced the charged offense to 28 to 200 grams, well within the weight found by the state's chemist. Contrary to Porter's contention, neither proof of a certain weight of the controlled substance segregated from the mixture nor proof of a certain percentage of the controlled substance is required to meet the charging threshold. Porter fails to show that the post-conviction court's denial of his claims of ineffective assistance of counsel is an unreasonable application of controlling federal law or an unreasonable determination of fact. As a consequence, Porter is not entitled to relief under Ground Two.

## B. CONSTITUTIONALITY OF CONVICTION

In addition to his claims of ineffective assistance of counsel, in his motion for post-conviction relief Porter challenged the constitutionality of his conviction based on a change in the law, which claim the post-conviction court summarily rejected without an evidentiary hearing.

Ground Three:

Porter alleges that his conviction is unconstitutional based on *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011), which found Section 893.13, Florida Statutes, unconstitutional for lacking a *mens rea* requirement. The post-conviction court summarily rejected this claim without an evidentiary hearing as follows: (Petitioner's Exhibit 3, Doc. 10 at 8 and 10):

> Firstly, decisions of federal district courts are not binding on state trial courts. But decisions of Florida appellate courts are. *See State v. Dwyer,* 332 So. 2d 333. 335 (Fla. 1976). In Florida, absent inter-district conflict, Florida district court decisions bind Florida trial courts unless overruled by the Florida Supreme Court, *see Pardo v. State,* 596 So. 2d 665 (Fla. 1992). The Defendant is not entitled to relief because this Court must follow controlling Florida law that upholds the constitutionality of §893.13, Florida Statutes. The Second District Court of Appeal has rejected

constitutional challenges to §893.13, Florida Statutes. *See Burnette v. State,* 901 So. 2d 925 (Fla. 2d DCA 2005). Other district courts of appeal also have upheld the constitutionality of §893.13, Florida Statutes. *See Williams v. Stale,* 45 So. 3d 14 (Fla. 1st DCA. 2010); *Harris v. State,* 932 So. 2d 551 (Fla. 1st DCA 2006), *rev. denied,* 962 So. 2d 336 (Fla. 2007); *Taylor v. State,* 929 So. 2d 665, (Fla. 3d DCA 2006), *rev. denied,* 952 So. 2d 1191 (Fla. 2007); *Wright v. State,* 920 So. 2d 21, 25 (Fla. 4th DCA 2005), *rev. denied,* 915 So. 2d 1198 (Fla. 2005).

Secondly, Defendant was convicted under Section 893.135, not Section 893.13, which was the subject of *Shelton.* Section 893.135 expressly states that a defendant must have knowledge that he or she possesses an illegal substance in order to be charged with trafficking. Therefore, Defendant's analogy, likening his case to *Shelton*, must fail. The State had to prove that Defendant knew of the methamphetamine in order to obtain a conviction in this case. Therefore, Claim Three (3) is **DENIED**.

Porter cannot meet his burden of showing that the state court's decision was contrary to or an unreasonable application of controlling federal law. The state court corrected distinguished *Shelton* because his case involved trafficking under Section 893.135, which required knowledge. Moreover, Porter's reliance on *Shelton* is misplaced because the district court decision was reversed in *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012), *cert. denied,* 133 S. Ct. 1856 (2013). As a consequence, Porter is not entitled to relief under Ground Three.

Accordingly, Porter's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter a judgment against Porter and to **CLOSE** this case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

**IT IS FURTHER ORDERED** that Porter is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Section 2253(c)(2) limits the

issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Porter must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Porter is not entitled to a certificate of appealability and he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Porter must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, this 19th day of September, 2017.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE